The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner William C. Bost. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. At the time of the accident, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At the time of the accident, an employment relationship existed between Plaintiff and Defendant-Employer.
3. CNA Insurance Company provided workers' compensation coverage for Defendant-Employer at the time of the accident.
4. Plaintiff suffered an injury by accident on April 13, 1993 and an I.C. Form 21 Agreement was approved by the Commission on August 27, 1993.
5. Plaintiff was paid temporary total disability benefits as a result of the accident from April 14, 1993 through May 15, 1993.
6. Pursuant to the I.C. Form 21, plaintiff's average weekly wage is $258.37 yielding a compensation rate of $172.25.
7. A Pre-Trial Agreement containing certain stipulations was received into evidence at the hearing.
8. In addition, the parties submitted a stipulated pack of medical records, Plaintiff's Answer's to Interrogatories, a work search record from the Unemployment Security Commission, and a payment history for unemployment compensation benefits received by the Plaintiff. Subsequent to the hearing, and pursuant to Order of the Commission.
9. Depositions of Dr. Scott M. McCloskey and Dr. William M. McKinney are made part of the evidentiary record. The objections raised by the parties at the depositions are ruled upon in accordance with the law and the Opinion and Award in this case.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. At the time of the hearing Plaintiff was 36 years old, had a high school diploma and had completed several college courses in computers and criminal justice. Plaintiff's work history included positions in car sales, bartending, temporary employment, as well as several periods of unemployment.
2. In early 1993 Plaintiff began working as a temporary employee with Manpower Temporary Services, the Defendant-Employer, where she was placed in a position at the ITT Automotive Plant. Her duties included sorting and inspecting parts.
3. On April 13, 1993, Plaintiff felt a pop in her back after lifting several boxes in the normal course of her duties. She continued lifting several boxes thereafter and sometime later, upon reaching for a ring light used to inspect adaptor bars, she felt pain in her chest and began to hyperventilate. Plaintiff was taken by ambulance to Grace Hospital where she was treated for chest wall pain and back pain. She was released from the hospital that day.
4. Plaintiff was treated by Dr. W.C. Thompson, a general practitioner, who diagnosed a muscular strain of the back. Dr. Thompson ordered physical therapy and upon completion of the therapy program Plaintiff noted a decrease in back pain, as reflected in Dr. Thompson's notes.
5. On May 13, 1993, Dr. Thompson examined the Plaintiff and noted no tenderness in the back and a full range of motion. Dr. Thompson felt the muscular back strain had resolved and that the Plaintiff could return to work without restrictions. While the Plaintiff reported other symptoms to Dr. Thompson, according to the physician these symptoms were unrelated to the back strain and the result of perhaps stress or some other physical disorder which was not work-related.
6. Plaintiff was paid benefits by the Employer from April 14, 1993 through May 15, 1993. After Plaintiff was released to return to work by Dr. Thompson she was contacted by the Defendant-Employer and offered several temporary positions.
7. Plaintiff refused such employment and instead reported to Manpower that she no longer wished to work for the temporary agency.
8. After approximately one month, Plaintiff was deemed to have resigned from employment with Manpower.
9. Although the Plaintiff made no attempts to contact the Defendant-Employer to request placement in a temporary position, Manpower had available various suitable positions, including light industrial work.
10. Following Plaintiff's refusal to accept employment through the Defendant-Employer, she applied for unemployment compensation and received such benefits from June 8, 1993 through January 1994 in the amount of $130.00 per week (except for the weeks ending December 13, 1993 and December 20, 1993 during which she received $65.00). During this seven month period the Plaintiff certified her ability to work and sought employment with at least two employers each week. Plaintiff was never denied employment due to any work-related injury and was capable of earning wages during this period of time.
11. Following her release from Dr. Thompson, Plaintiff was seen by a neurosurgeon, Dr. Scott M. McCloskey on May 17, 1993. Dr. McCloskey examined the Plaintiff and reviewed an MRI of the cervical, thoracic and lumbar spine, which showed no significant findings. Dr. McCloskey concurred with Dr. Thompson that the Plaintiff had suffered only a strain to her back and that as of June 30, 1993 she had reached maximum medical improvement for the work injury. She was released with lifting restrictions of no greater than 30 to 40 pounds and rated with a zero percent permanent partial disability.
12. Following the treatment with Dr. McCloskey, plaintiff did not seek any other medical treatment until February 1994. During this time, without treatment she actively sought employment as described above.
13. In February 1994 Plaintiff was seen by another neurologist, Dr. Larry Boyles. Plaintiff's symptoms as reported to Dr. Boyles varied from those which she had reported immediately following the accident in April 1993.
14. On March 3, 1994 Plaintiff was seen by Dr. William M. McKinney, another neurologist. Again, Plaintiff's symptoms as reported to Dr. McKinney varied from those which she reported at the time of the accident. Dr. McKinney ordered another MRI in April 1994 which showed no abnormality and specifically did not suggest a vascular malformation, a possible diagnosis which Dr. McKinney considered.
15. Dr. McKinney made no firm diagnosis and administered no active treatment. Dr. McKinney did note that the Plaintiff could perform light duty employment.
16. Plaintiff was seen by Dr. Stephen Page, a family physician, who noted multiple complaints, again all different from those registered at the time of the accident.
17. On April 17, 1995, two years after the accident, Plaintiff was seen by Dr. D. Dennis Payne complaining of pain all over, diffuse swelling, a non-restorative sleep pattern, diffuse weakness, a gagging feeling, and nocturnal pain. These complaints were different than those which Plaintiff noted near the time of the accident. Dr. Payne concluded that all of her MRI studies and other diagnostic tests were completely normal and diagnosed possible fibromyalgia, reactive in nature. Dr. Payne did not relate this condition to the accident in April 1993.
18. Plaintiff had made no attempts to find employment after March 1994, but, since that date none of her doctors have kept her out of work.
18. Plaintiff took several college courses in the spring and summer of 1994.
19. The Plaintiff suffered only a back strain as a result of the accident. Plaintiff's back strain resolved as of May 13, 1993 and Plaintiff was able to earn the same wages which she earned at the time of the accident in the same or other employment as of May 13, 1993.
20. Plaintiff's complaints to Dr. McKinney were different than those she registered at and near the time of the accident. Dr. McKinney could not formulate any specific diagnosis and found that all of the diagnostic studies including several MRIs of the entire spine, EMGs and an MRI of the brain were completely normal.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. In the present case, Plaintiff has failed to present competent medical evidence relating any alleged injury or condition after June of 1993 to the April 13, 1993 accident.
2. Plaintiff has failed to prove these essential elements and has not shown disability, as defined by the Act, after the last payment of compensation on May 15, 1993. Any failure of the Plaintiff to earn wages after May 15, 1993 is not due to her work-related injury.
3. Any medical treatment received by the Plaintiff after June of 1993 was not a result of the April 13, 1993 accident and is not compensable. N.C.G.S. § 97-2 (6); N.C.G.S. § 97-25.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Plaintiff's claim for further workers' compensation benefits as a result of the April 13, 1993 accident must, under the law, be and is hereby DENIED.
2. Each side shall pay its own costs.
 S/ _______________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ _______________________ J. RANDOLPH WARD COMMISSIONER
S/ _______________________ COY VANCE COMMISSIONER
DCS:bjp